IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| SAINT LUKE'S HOSPITAL OF KANSAS CITY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 14-00059-CV-W-SWH |
| WABASH MEMORIAL HOSPITAL ASSOCIATION, | ) ) ) | |
| Defendant. | ) ) | |

## ORDER

Pending before the Court is Defendant Wabash Memorial Hospital Association's Motion to Dismiss Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc #5). Defendant seeks to dismiss the Complaint for Breach of Contract based on the following:

> In this case, St. Luke's is arguing that Wabash should be liable for state law breach of contract claims because Wabash breached a contract between St. Luke's and BCBS ("the Hospital Contract"). Essentially, St. Luke's seeks to impose on Wabash terms of a contract to which Wabash is not a party. St. Luke's wants the Hospital Contract to govern how Wabash should have paid the claims submitted by St. Luke's, as opposed to Wabash's plan document. However, Wabash's plan document controls how it pays claims. Because Wabash is an ERISA plan, and any legal duty owed by Wabash to St. Luke's cannot be decided without reference to the plan documents, ERISA completely preempts St. Luke's breach of contract claims.

(Wabash Memorial Hospital Association's Suggestions in Support of Its Motion to Dismiss the Complaint Pursuant to 12(b)(6) (doc #6) at 5) Plaintiff has filed a memorandum in opposition to defendant's motion (doc #8) and defendant has filed reply suggestions (doc #11).

## I. STANDARD FOR MOTION TO DISMISS

In order to meet the pleading standard set forth in Rule 8[1] of the Federal Rules of Civil Procedure and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009)(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## II. FACTS

Plaintiff's Complaint for Breach of Contract (doc #1) set forth the following factual allegations:

    2.    Defendant ("Wabash") [is] a non-profit Health and Welfare Trust Association ….

    3.    Wabash provides health insurance to its members throughout the United States, and specifically to members located within the State of Missouri.

    4.    Wabash contracts with Blue Cross/Blue Shield (including specifically Blue Cross/Blue Shield of Kansas City) to provide its members participating provider organization services.

\* \* \*

    9.    On or about October 16, 2011, St. Luke's admitted a patient known as David Francis ("Patient") a resident of Missouri.

    10.    Said individual was, at the time of admission to the hospital a member of and covered by the Wabash health insurance plan. Blue Cross/Blue Shield is Wabash's Preferred Provider Organization.

    11.    Patient received emergency and additional medical treatment from St. Luke's in Kansas City, Missouri from October 16, 2011 through November 18, 2011 at which time Patient was discharged.

---

[1] Pursuant to Rule 8(a)(2), a pleading that states a claim for relief must contain: "a short and plain statement of the claim showing that the pleader is entitled to relief."

2

12. The reasonable value of the medical services and supplies provided by St. Luke's, to Patient totaled $567,035.74.

13. On or about October 20, 2011, St. Luke's personnel spoke with Wabash personnel and Wabash confirmed that patients' [sic] medical treatment was covered by Wabash, and Wabash provided St. Luke's specific authority to provide all service necessary to patient and that Wabash would pay the same, all pursuant to its PPO agreement with Blue Cross/Blue Shield.

14. St. Luke's is a "Network Provider" as defined in an agreement between Blue Cross and Blue Shield of Kansas City of [sic] St. Luke's.

15. Wabash is a "Payor" as defined by the aforesaid Agreement.

16. All charges submitted by St. Luke's to Blue Cross/Blue Shield and to Wabash were in accordance with the terms and conditions of the aforementioned Agreement.

17. On or about May 31, 2012, Wabash paid to St. Luke's the sum of $246,851.22.

18. The payment by Wabash was in breach of the aforementioned agreement and did not pay the agreed charges in full. The total amount that Wabash was obligated to pay was $381,615.05.

19. St. Luke's fully performed its obligations to the benefit of the patient and at the instance of Wabash, but Wabash failed to pay St. Luke's as agreed ….

(Doc #1 at 1-3)

III. DISCUSSION

The underlying premise of defendant's motion to dismiss is that the only pertinent document in this case is Wabash's plan document, a document that is governed by ERISA. According to defendant, ERISA completely preempts St. Luke's breach of contract claim (apparently under both 29 U.S.C. §§ 1132(a) and 1144(a), as both are cited in defendant's briefing). The same arguments were recently made and rejected in Stanford Hospital and Clinics v. Hawaii Management Alliance Association, No. C 12-05273 WHA, 2012 WL 6178519 (N.D.

3

Cal. Dec. 11, 2012). That case provided:

**STATEMENT**

Plaintiff Stanford Hospital and Clinics, a medical care provider, entered into a preferred hospital agreement with Private Health Care Systems, a non-party to this civil action, to provide medical care at reduced rates to covered individuals. The complaint alleges that Hawaii Management Alliance Association, doing business as Hawaii Medical Assurance Association, a plan administrator, agreed to be bound by the terms of the preferred hospital agreement and thereby gained access to the reduced rates negotiated by Stanford and Private Health Care Systems. Under the terms of the preferred hospital agreement, Hawaii Medical was obligated to reimburse Stanford for these discounted-rate medical services.

In March 2011, Stanford provided medical services to a covered individual and submitted a claim directly to Hawaii Medical. The complaint alleges that Hawaii Medical verified via phone to Stanford that the covered individual had active healthcare coverage. The complaint further alleges that Hawaii Medical then refused to pay for the care after the services were provided, thereby violating the preferred hospital agreement and an oral contract.

Stanford commenced this action by filing a complaint against Hawaii Medical in the Superior Court of California, County of Santa Clara alleging claims for: (1) breach of written contract, (2) breach of oral contract, (3) negligent misrepresentation and (4) quantum meruit. Hawaii Medical removed and filed a motion to dismiss the complaint, arguing that Stanford's state-law claims are preempted by ERISA. Stanford responds that its claims are not preempted because they are based on both the preferred hospital agreement and the oral representations Hawaii Medical made to Stanford and, as such, are independent of the plan.

**ANALYSIS**

There are two types of preemption under ERISA: (1) complete preemption under Section 502(a), and (2) conflict preemption under Section 514(a). Complete preemption applies where a complaint asserts a state-law claim that falls within the scope of one of the civil enforcement provisions of ERISA. <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 210 (2004). In contrast, the conflict preemption provision under Section 514(a) of ERISA preempts state laws "insofar as they ... relate to any employee benefit plan." Hawaii Medical contends that Stanford's state-law claims are preempted under both complete and conflict preemption. This order disagrees.

**1. COMPLETE PREEMPTION.**

The Supreme Court has held that a state-law claim is completely preempted by ERISA if: (1) an individual at some point in time could have brought the claim

4

under ERISA Section 502(a)(1)(B), and (2) where there is no other independent legal duty that is implicated by a defendant's actions. A state-law claim is only completely preempted if both prongs are satisfied. Davila, 542 U.S. at 210. Hawaii Medical has failed to satisfy either prong of the Davila test.

As to the first prong, ERISA Section 502(a)(1)(B) provides that a "participant or beneficiary" of an ERISA plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ...." Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc., 187 F.3d 1045, 1051 (9th Cir. 1999). Here, Stanford is not suing as a beneficiary or as an assignee of the covered individual's rights under the plan but, rather, pursuant to contractual rights allegedly conferred by the preferred hospital agreement and oral representations made by Hawaii Medical.

Hawaii Medical asserts that complete preemption applies because Stanford is attempting to recover benefits for the treatment of a patient who is covered by an ERISA plan. Our court of appeals' decision in Blue Cross is controlling. Like here, Blue Cross involved medical providers who were seeking contract damages from an insurer based upon a breach of the provider agreements. The insurer argued that because the patients were beneficiaries of ERISA health plans, the hospitals were claiming benefits under ERISA plans. In rejecting that argument, the appellate decision found that the claims, "which arise from the terms of their provider agreements and could not be asserted by their patient-assignors, are not claims for benefits under the terms of the ERISA plans, and hence do not fall within [Section] 502(a)(1)(B)." Id. at 1050. So too here. Based on the allegations in the complaint, the covered individual could not have asserted the claims made by Stanford as she was not a party to the preferred hospital agreement or the oral contract between Stanford and Hawaii Medical. The mere fact that the patient treated by Stanford was covered by an ERISA plan does not mean, in and of itself, that the claims could have been brought under Section 502(a)(1)(B).

As to the second prong, Stanford's allegations implicate an independent legal duty. Where a medical provider predicates its suit against an insurer on an agreement other than the health plan, its claims are not preempted. Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 950-51 (9th Cir. 2009). Here, Stanford's claims are based on Hawaii Medical's failure to pay for medical services rendered in violation of the preferred hospital agreement and oral representations. The complaint therefore alleges the existence of such an independent duty. Accordingly, Stanford's claims are not subject to complete preemption.

**2. CONFLICT PREEMPTION.**
The conflict preemption provision of Section 514(a) of ERISA preempts

state laws "insofar as they ... relate to any employee benefit plan." The Supreme Court determined that a state-law claim "relates to" an employee benefit plan governed by ERISA "if it has a connection with or reference to such plan." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995). Under the relationship test, courts "look to whether the state law encroaches on relationships regulated by ERISA, such as between plan and plan member, plan and employer, and plan and trustee." Blue Cross, 187 F.3d at 1053. State-law claims did not "relate to" an ERISA plan where the "adjudication of the claim required no interpretation of the plan, no distribution of benefits, and no dispute regarding any benefits previously paid." Peralta v. Hispanic Business, Inc., 419 F.3d 1064, 1069 (9th Cir. 2005).

Here, the complaint alleges that both a separate written and verbal contract, which Hawaii Medical and Stanford are both a party to, exists. Hawaii Medical's duty to reimburse Stanford for the covered individual's care arises from those contracts. The complaint makes no reference to the effect of the ERISA plan on Stanford's claims and whether or not the preferred hospital agreement or oral agreement is impacted by the ERISA plan. Stanford also stresses in its opposition that it is not seeking to recover as an assignee of the covered individual's benefits but, rather, pursuant to the separate contracts between Stanford and Hawaii Medical.

Our court of appeals has held that conflict preemption is not applicable to state-law claims that are: (1) asserted by hospitals directly against plan administrators based upon contracts between the two parties, and (2) where the interpretation of the contracts did not implicate an ERISA plan. See Blue Cross, 187 F.3d at 1045; The Meadows v. Employers Health Ins., 47 F.3d 1006 (9th Cir. 1995). Hawaii Medical argues that these decisions are distinguishable because Stanford's claims cannot exist without the plan. There is no connection between Stanford and Hawaii Medical except for the connection arising through the patient's enrollment in the plan. Accordingly, Hawaii Medical argues that Stanford's claims relate to the plan because disposition of the claims will require interpretation of the plan's provisions. Hawaii Medical relies on a factually similar decision which found that the plaintiff's claims were subject to conflict preemption. See Fresno Community Hosp. and Medical Center v. Souza, 2007 WL 2120272 (E.D. Cal. July 23, 2007)(Judge Lawrence J. O'Neill). In Souza, as here, a medical provider asserted state-law claims against plan administrators for failure to pay for care provided to a patient pursuant to the terms of a preferred hospital agreement.

That decision, however, relied upon the express language of the preferred hospital agreement which stated that the agreement was subject to the exclusions and limitations of the ERISA plan. The decision concluded that disposition of the state-law claims required an application of the ERISA plan and, thus, the "relates

6

to" requirement was satisfied.

The holding in Souza points to the exact problem with Hawaii Medical's argument here. Applying the analysis in Souza would require this order to look outside the four corners of the complaint. Contrary to Hawaii Medical's arguments, whether or not the patient is covered by an ERISA plan is not dispositive. What is essential are the terms and conditions of the preferred hospital agreement and oral agreement between the parties. If those agreements are subject to the limitations of the ERISA plan or that Stanford's claims otherwise require an interpretation of the ERISA plan, then Hawaii Medical has a strong conflict preemption argument. Neither party, however, has appended the preferred hospital agreement. Thus, based on this record at this stage in the litigation, it would be premature to make such a finding. This order, therefore, finds that based on the record, it is plausible for plaintiff to prove a set of facts that would defeat Hawaii Medical's preemption argument. Hawaii Medical may, of course, raise its preemption argument again in a timely motion for summary judgment.

Stanford Hospital and Clinics, 2012 WL 6178519 at *1-3 (citations to complaint omitted).

The complaint before this Court alleges that plaintiff Saint Luke's Hospital of Kansas City ("Saint Luke's Hospital") entered into an agreement with Blue Cross/Blue Shield (like plaintiff Stanford Hospital and Clinics entered into an agreement with Private Health Care Systems), a non-party to this civil action, to provide medical care at reduced rates to covered individuals. Defendant Wabash Memorial Hospital Association ("Wabash") agreed to be bound by the terms of the agreement (like defendant Hawaii Management Alliance Association) and thereby gained access to the reduced rates negotiated by Saint Luke's Hospital and Blue Cross/Blue Shield. Under the terms of the agreement, Wabash was obligated to reimburse Saint Luke's Hospital for these discounted-rate medical services. On or about October 20, 2011, Saint Luke's Hospital personnel spoke with Wabash personnel and Wabash confirmed that David Francis' medical treatment was covered by Wabash, and Wabash provided Saint Luke's Hospital specific authority to provide all service necessary to Mr. Francis and that Wabash would pay the same, all pursuant

7

to its PPO agreement with Blue Cross/Blue Shield. As in Stanford Hospital and Clinics, plaintiff Saint Luke's Hospital allegedly has claims for breach of both a written and oral contract.

The Court agrees with the reasoning set forth by the Stanford Hospital and Clinics court that there is no complete preemption as Saint Luke's Hospital is not suing as a beneficiary or as an assignee of Mr. Francis' rights under the plan[2] but, rather, pursuant to contractual rights allegedly conferred by the PPO agreement and oral representations made by Wabash. Based on the allegations in the complaint, Mr. Francis could not have asserted the claims made by Saint Luke's Hospital as he was not a party to the PPO agreement or the oral contract between Saint Luke's Hospital and Wabash. Finally, Saint Luke's Hospital's allegations implicate an independent legal duty.[3] The Court further agrees with the reasoning set forth by the Stanford Hospital and Clinics court that a conflict preemption issue has not been sufficiently presented at this time. Whether or not Mr. Francis is covered by an ERISA plan is not dispositive. What is essential are the terms and conditions of the PPO agreement and oral agreement between the parties. If those

---

[2] In the case that defendant Wabash cites as "directly on point," Northwestern Memorial Hospital v. Lake County Board of Commissioners Employee Health Benefit Plan, 906 F.Supp.2d 791, 798 (N.D. Ill. 2012), the court found complete preemption under Davila stating: "First, not only could Northwestern have brought its claim under § 502(a)(1)(B), it did so in count I by suing as assignee of Patient AD. The facts alleged in Northwestern's breach of contract claim in count II mirror the allegations in count I. As such, the breach of contract claim falls squarely within § 502(a)(1)(B)." Plaintiff Saint Luke's Hospital has not brought its claim by suing as assignee of Mr. Francis, thus, the Court does not find Northwestern Memorial Hospital to be particularly relevant.

[3] Again, in Northwestern Memorial Hospital, the court found: "Second, the Hospital Contract did not place a separate legal duty on the Plan to reimburse Northwestern for Patient AD's medical treatment. … Under the Hospital Contract … liability exists only where the Plan covered Patient AD's medical services and the Plan nonetheless refused to pay for the treatment. The Hospital Contract does not impose additional liability on the Plan to pay for services not covered by the employee benefit plan." 906 F.Supp.2d at 798. Here, while the actual PPO agreement has not been provided to the Court, the allegations of the complaint suggest that this agreement does impose additional liability on Wabash. Again, the Court does not find Northwestern Memorial Hospital to be particularly relevant.

8

Case 4:14-cv-00059-SWH   Document 20   Filed 12/02/14   Page 8 of 9

agreements are subject to the limitations of the Wabash plan or that Saint Luke's Hospital's claims otherwise require an interpretation of the Wabash plan, then Wabash has a strong conflict preemption argument. Neither party, however, has provided the Court with the PPO agreement. "Thus, based on this record at this stage in the litigation, it would be premature to make [a conflict preemption] finding." Stanford Hospital and Clinics, 2012 WL 6178519 at *3. As in Stanford Hospital and Clinics, defendant Wabash may, of course, raise its preemption argument again in a timely motion for summary judgment.

## IV. CONCLUSION

The Court finds that plaintiff's Complaint for Breach of Contract contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Based on the foregoing, it is

ORDERED that defendant's Motion to Dismiss Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc #5) is denied.

                                            */s/ Sarah W. Hays*
                                          SARAH W. HAYS
                                  UNITED STATES MAGISTRATE JUDGE

9

Case 4:14-cv-00059-SWH   Document 20   Filed 12/02/14   Page 9 of 9